May it please the Court, Diane Burley for Appellant Darnell Washington. In the briefing, which all was completed just prior to the Crawford v. Washington decision, I think we can conclude that the redacted transcript doesn't implicate Washington. It wasn't used against your client if what they did was correct. I'm sorry, Your Honor. Can you rephrase that? I didn't. What does that case have to do with this case? Crawford v. Washington. Right. This evidence wasn't used against your client. Mr. Chandler's statement most certainly was used against my client. Well. Okay. It was a non-testimonial out-of-court statement that was redacted improperly. The district court found that it was error, and the only question was whether it was harmless error. And our question is not what the district court did. The question is whether the California Court of Appeals decision is contrary to clearly established U.S. Supreme Court law at the time it made its decision. Yeah. I understand that, Your Honor. And I would – my argument would be yes, it is. Yes, it was. Because? Yes, it was because the – it was an unreasonable application of the facts. You have the statement of Chandler that was redacted in a way that basically there was no doubt that that's – that he was referring to. Well, as I understand it, the statement itself just said people, person, whatever, and there were at least – I think there were three people who were actually identified, and there were six or seven other people in the crowd who were not. So the statement could have applied to any of those individuals. Well, under existing law, under Gray v. Maryland and the California case of People v. Fletcher and – California case doesn't make any difference, U.S. Supreme Court. And the – and the – and Lilly v. Virginia, but primarily Gray v. Maryland, talks about redaction and that if it's done in a way that you cannot identify, then it's permissible. But in this case, that really isn't what happened. That's what I'm asking is why not, because it seems to me that it could have applied to five or six people who were in the crowd. Why do you disagree with that? I don't have an answer for that, Your Honor. The way I read the facts, they said people, but it wasn't clear how many people were there. And the fact that the other witness, Johnson, made a statement that it was my client, basically was like pointing arrows to who it really was. And I think that's a problem under Gray v. Maryland, as well as California law, although, as you said, that isn't our concern here. And when you get to the district court, if you read the district court's opinion, they – you know, it's like they're rationalizing why this wasn't harmless there. I think they used the wrong standard. I think the standard is harmless beyond a reasonable doubt. And we talked about that in the briefing. But the facts – to me, the facts are that you had Chandler making this out-of-court statement that clearly pointed to our client, and then we have Johnson, who gets on the stand and essentially refuses to testify, and then you have a police officer who refutes his denial by testifying as to what he – the statement he gave to the police under a procedure in California called People v. Green, and I think it's discussed in California v. Green also. You basically had – you know, in terms of harmless error, you have these two witnesses, neither of whom my client had a meaningful opportunity to cross-examine. Right, right. It's all dependent on the predicate, and it seems to me that's the critical issue here. I'm sorry? It's all dependent on the predicate. And if, in fact, the statement clearly refers to your client, then you have a strong argument. If it does not clearly refer to your client, if it refers to lots of other folks, then it's a different story. So that seems to me the pivotal issue. I would agree with you, Your Honor. And I – the way I read the statement, it seems to me that it's clear that he's referring to my client. I mean, the statement could be right. Well, the way you read the statement, but, you know, with all due respect, that's utterly irrelevant. You understand the standard. Absolutely. The California Court of Appeal took a look at this, and you start from the proposition that redactions are okay if you can cut enough stuff out. Right. To remove any possibility that somehow the jury can read into it the name of the other person. And here the California court says in gray, the court found the redactions that replace a proper name with an obvious blank, the world delete, assemble, or similarly notify the jury that a name has been deleted, generally should not be omitted. Generally. Here there was nothing to indicate that a name had been deleted. There were 10 to 15 people present at the crime scene, and Chandler's redacted confession named only about five of them. In addition to numerous unnamed bystanders, three actors in the crime were among the unnamed. The person who gave Chandler a handgun, the person who filed the rifle, the person who took the rifle away from the shooter. These three men were referred to as somewhat a person and an individual. Thus, there was nothing to indicate that any one name had been deliberately deleted. Further, assuming for the sake of argument that the jury believed the names of the handgun provided the shooter and the remover had been redacted, there was no basis to infer that Washington must have been one of these men. And so why is that an unreasonable application of Federal law? I mean, we have a reasoned decision saying that based on Supreme Court precedent, we think that it was sufficiently redacted. I might not think so. You might not think so. That's not the issue. No, Your Honor, I misspoke, obviously. But I think it's an unreasonable application because I think with a wink and a nod, the jury knows darn well who he's talking about. Well, where's the wink and the nod? Well, and then you have the other testimony that wasn't tested either through cross-examination meaningfully. Moreover, well, moreover, you have the Court saying now you misunderstand that the evidence or the statement attributed to Mr. Chandler may be considered by you only as it relates to Mr. Chandler and not be considered by you as it relates to Mr. Washington. So the Court told the jury that has nothing to do with Washington. Your client's Washington. Yes, I understand. That's what I meant earlier when the Court said this is not admissible against your client. So there's no confrontation problem. Well, I think the only question is the redaction. I think that I believe there is case law, I don't have it at my fingertips, that talks about the fact that in certain situations the instructions just aren't sufficient to protect the defendant's rights. And certainly under Crawford, I take it the Court is not concerned about Crawford, which I am surprised about. But under Crawford, this is a non-testimonial statement. I mean, there's just no question. Right. But it's good. I think we just have to read it and reach our own conclusions. Obviously, the district court went your way and said it's obvious to the jury who this was, and it's obvious constitutional error. Well, we actually have three positions. We have the court of appeal position, which says this was an error. We have the district court position, which says it was error, but it was harmless. And then there is Petitioner's position, which is it was error and it was not harmless. So basically we're arguing, we're quibbling about the facts. Well, what's your best argument, given the fact that there are a lot of people that the same refer to? What's your best argument in the context of the trial that the jury could have only concluded that it was your client to whom the statement referred? My best argument is that the redaction was ineffective because the reliability of all of the evidence against my client was questionable. This was not a strong case. You've got one street person, Johnson, talking to the police and being refuted by a police officer's testimony under People v. Green. You've got Chandler, who clearly had a motive to fabricate. Yes, it's true, his statement came in in a redacted form, but I think the implication is still there. Okay. That it was my client who ran in and did the shooting. And there was other evidence. I believe, I don't know, I shouldn't speak until I look at it, but I think there was other evidence, some ballistics evidence and stuff also. Was it? Oh, I'm out of time. I would like to have a minute to rebut if that would be okay. Okay. We've asked you a lot of questions. Good morning, Your Honors. This is not a Crawford case. First of all, here, as you pointed out, the Chandler statement was introduced only against Chandler with a very specific and expressed limiting instruction, which already is materially distinguishable from the situation in Crawford. This is a Bruton case. And in this case, the redacted statement was not facially incriminating. It just wasn't. As we pointed out in the briefs and as Judge Reimer pointed out, this was a group scene where there were named actors, unnamed actors, unnamed non-participants. It was a very – it was not a case, if you recall, in Bruton historically where the statement that was admitted named the co-defendant and the defendant. So what do you make of the district court's statement that this testimony is particularly problematic because Chandler's confession was not a traditional confession of guilt, but rather an attempt to exculpate himself by shifting blame to the person with the rifle? Given that the petitioner was the only other defendant, the jury could only assume that he was the man Chandler had been talking about. I don't think the jury could only assume that he was the man he was talking about. I think that there were – there were – you know, Chandler's statement – I don't call it a confession. I call it a statement. It described what happened. And in that – in fact, he – Chandler says, I only shot off to the side once and I don't even know if I hit him. Well, that's not a confession. In fact, when the body was riddled with bullets and when the forensic evidence showed that the six, I believe – So he was trying to miss him and he was a bad shot. Yeah. Yeah, he certainly – yeah. You must have closed one eye and gotten very lucky to have hit the victim so many times. But the forensic evidence showed that there were nine, you know, millimeter shells all came from the same gun. And Chandler's statement described what happened, but it didn't describe it in a way where the jury had to know, oh, we're talking about Mr. X. There's Mr. X and there's the co-defendant. It's a whole group of people. It was an angry, hostile crowd. In fact, one of them said that, you know, we're going to – Johnson, I believe, said that the crowd was hostile and there were many people milling around and there, like we identified, there were some named participants, some unnamed. There's nothing that – this was not a case where there was a deleted name or a blank or even – it was just – it was a statement with several people in it, and any one of those people could have been Petitioner. But the jury was not compelled to find that any particular actor was Petitioner. Now, that's – so we believe – so the California Court of Appeals opinion was correct and was reasonable in determining that no brutal error occurred. And even if brutal error did occur, again, Crawford adds nothing to the analysis of this Court's determination of whether the error was harmless because the proper standard is Brecht. And although Petitioner argues that Chapman – the Chapman standard applies, that's not the case. And here we are in collateral review, and the question is whether it was – whether this erroneous admission, if it was erroneous, had a substantial and injurious effect on the verdict. And the reason it doesn't is because of Johnson. Johnson's statement alone was enough to convict Petitioner. And it was credible. His statement to the police was much more credible than his recantation at trial. He was – his – Well, you've got a recanting witness. I mean, that's kind of – that's hardly – I understand what the district court did with that, too, but, I mean, that's a little thinner than one would hope. Yeah, well, it's – But, I mean, it seems to me, going back, the best argument that they have is that, look, there's only one rifle wound. The statement talks about somebody else in the crowd with a rifle, and then you have the defendant there. So how were – how was the jury to assume it was anybody else? Well, because the person's not named. They said someone shot him. It doesn't say – you know, it doesn't talk – it talks in terms of a group. And someone handed him a rifle, the shooter a rifle. Someone – the shooter shot him. Someone took the rifle away. Johnson's statement is properly admitted, and that's enough to convict him on. If the jury – that's why, if the jury were to take – were to ignore the limiting instruction and give weight to Chandler's statement inappropriately, it's just cumulative. It's just – it's not as strong as Johnson's detailed statement to the police of what happened. And – but we – but the mental gymnastics required, as the district court said, to not believe it was Petitioner. We think that's – it's not the case. It's just there were a lot of people there, and it could have been any of these people. And therefore, there was no brutal error. And if there was, it was harmless because of Johnson's statement. It was – did not have a substantial injurious effect because Johnson's statement was credible. Even on a cold record, his reasons for not wanting to testify are vague. He said, oh, I was mad. It was a grudge. I was jealous. They're tossed off. He just doesn't want to be there. And the jury was there. They could judge his credibility. They could see his demeanor, and they found him credible. They found his testimony credible. Not at the trial, but in talking to the detective. We believe the district court did properly decide that this, if error, did not have a substantial injurious effect on the verdict. Anything else? Thank you, counsel. No. Do you have anything you want to say to us? No. All right. This case is ordered submitted. We'll caucus for two seconds. I think we should just submit it. Thank you. We'll just submit the first case. Up to you. Terry Law. Not here. D. Kyle Sampson. Mr. Sampson, have you come all the way down here from Washington, D.C.? Well, I suppose under the circumstances, we'll give you an opportunity to say anything to us you'd like to, or to submit the case on the briefs. Which would you like to do? Well, the court believes it would be helpful to have you advocate my argument, but not for my sake. Fine. Submit. It's always risky to take the stand. All right. With apologies for a trip that turns out to be an interesting opportunity to watch us perform only, we'll order the case of United States v. Javier Ferreira submitted on the briefs. Thank you, counsel. And we are in recess until tomorrow morning at 9 o'clock. All rise. The court will recess and adjourn. Thank you.  Thank you.
judges: Trott, Rymer, Thomas